IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARMEN CARRABIS, on behalf of Plaintiff and the class members described herein, <br><br> Plaintiff, <br><br> vs. <br><br> HEALTHCARE FINANCE DIRECT, LLC; RONALD JOHNSON; TYLER JOHNSON; LUKE JOHNSON; and JOHN DOES 1-10, <br><br> Defendants. | Case No. 1:24-cv-4566 |

## **COMPLAINT – CLASS ACTION**

### **INTRODUCTION**

1. Plaintiff Carmen Carrabis brings this action to secure redress for the conduct of HealthCare Finance Direct, LLC and its officers and managers in inducing and coercing payment for goods and services not provided.

### **JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction under 28 U.S.C. §1332(d), 28 U.S.C. §1367, and 18 U.S.C. §1964.

3. Personal jurisdiction and venue in this District are proper because (a) Plaintiff resides in this District, (b) Defendants are seeking and obtaining payments from Plaintiff in this District and (c) pursuant to 18 U.S.C. §1965.

### **PARTIES**

4. Plaintiff Carmen Carrabis is presently a resident of Chicago. She formerly resided in Texas.

5. Defendant Healthcare Finance Direct, LLC is a limited liability company organized

1

under California law with its principal address at 1707 Eye Street, Suite 300, Bakersfield, CA 93301. Its registered agent is Tyler Johnson at that address.

6. Defendant Healthcare Finance Direct, LLC is engaged in the business of providing financing for medical and dental treatment. Healthcare providers arrange for Healthcare Finance Direct, LLC to finance their patients' transactions. (Exhibit A)

7. Defendant Healthcare Finance Direct, LLC states on its website that it has served over 1 million patients.

8. Defendants Ronald Johnson, Tyler Johnson and Luke Johnson are the three managers of Healthcare Finance Direct, LLC. Each may be found at 1707 Eye Street, Suite 300, Bakersfield, CA 93301.

9. Tyler Johnson also holds himself out as the Chief Executive Officer of Healthcare Finance Direct, LLC.

10. Luke Johnson also holds himself out as the Chief Revenue Officer of Healthcare Finance Direct, LLC.

11. Defendants John Does 1-10 are other persons and entities involved in the conduct complained of herein.

## FACTS

12. In late 2023, Plaintiff contracted with SmileDirectClub for dental alignment goods and services for $3800. The services included the provision of aligners plus continuous support and periodic visits to a dentist designated by SmileDirectClub to make sure the aligners were working properly. There was a lifetime warranty on the aligners.

13. The visits to a dentist and warranty were a material part of the consideration.

14. Plaintiff lived in Texas at the time but subsequently moved to Illinois, where she now resides.

15. SmileDirectClub arranged financing with Healthcare Finance Direct.

16. On information and belief, this was done by having Plaintiff execute a retail

installment contract which was assigned to Healthcare Finance Direct.

17. Plaintiff had no relationship with Healthcare Finance Direct prior to dealing with SmileDirectClub.

18. On September 29, 2023, SmileDirectClub had filed for bankruptcy.

19. As a result, Plaintiff has been unable to obtain a copy of her contract with SmileDirectClub.

20. Exhibit B is an example of the retail installment contract form typically used by SmileDirectClub.

21. Plaintiff paid a $500 down payment to SmileDirectClub, by credit card, on November 11, 2023.

22. Plaintiff received the aligners later in November 2023, after some delay.

23. At the time Healthcare Finance Direct took an assignment of Plaintiff's obligation, SmileDirectClub had already filed for bankruptcy. Healthcare Finance Direct and its managers knew that Plaintiff would never receive the full bargained-for consideration under her contract.

24. Defendants Ronald Johnson, Tyler Johnson and Luke Johnson nevertheless caused Healthcare Finance Direct to continue acquiring contracts on which Plaintiff and other consumers were obligated, knowing that the bargained for consideration would not be received by the consumers.

25. SmileDirectClub never completed the services for which Plaintiff contracted.

26. Healthcare Finance Direct continued charging Plaintiff's credit card account for payments. Plaintiff's account was charged for $106.54 on December 27, 2023, January 27, 2024, February 27, 2024, March 27, 2024 and May 2, 2024.

27. These debits were carried out by interstate wire transmission.

28. Other members of the class defined below similarly had monthly payments charged to their credit or debit cards, via interstate wire transmission.

29. Healthcare Finance Direct sought to have Plaintiff and class members pay via credit

or debit card.

30. Defendants Ronald Johnson, Tyler Johnson and Luke Johnson, as the managers of Healthcare Finance Direct, authorized and caused the company to continue taking payments from consumers subsequent to the SmileDirectClub bankruptcy.

31. Healthcare Finance Direct has taken the position that unless no aligners were provided at all, the consumer must continue to pay Healthcare Finance Direct. (Exhibit C).

32. Healthcare Finance Direct states on its website that "your Retail Installment Contract and payment plan are still active and valid."

33. It also states that Healthcare Finance Direct is not responsible for down payments or other payments made to SmileDirectClub. (Exhibit C).

34. In addition, the lifetime warranty will not be honored.

35. Healthcare Finance Direct's other communications with patients are consistent with the website.

36. Healthcare Finance Direct's statements imply that persons who received aligners but did not complete the professional services must continue paying.

37. On information and belief, Defendants Ronald Johnson, Tyler Johnson and Luke Johnson authorized and directed Healthcare Finance Direct to make such statements.

38. In March 2024 Plaintiff called Healthcare Finance Direct and was told that she had to continue making payments.

39. Plaintiff requested a copy of her contract, but was unable to obtain one.

40. 16 C.F.R. §433.2 provides:

Preservation of consumers' claims and defenses, unfair or deceptive acts or practices.

In connection with any sale or lease of goods or services to consumers, in or affecting commerce as "commerce" is defined in the Federal Trade Commission Act, it is an unfair or deceptive act or practice within the meaning of section 5 of that Act for a seller, directly or indirectly, to:

(a) Take or receive a consumer credit contract which fails to contain the following provision in at least ten point, bold face, type:

NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

or,

(b)  Accept, as full or partial payment for such sale or lease, the proceeds of any purchase money loan (as purchase money loan is defined herein), unless any consumer credit contract made in connection with such purchase money loan contains the following provision in at least ten point, bold face, type:

NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

41. On information and belief, the contract contains the required statement. However, under the Uniform Commercial Code, the assignee is subject to claims and defenses whether or not the required statement was included.

42. 810 ILCS 5/9-403 provides:

Agreement not to assert defenses against assignee

(a) "Value." In this Section, "value" has the meaning provided in Section 3-303(a) [810 ILCS 5/3-303].

(b) Agreement not to assert claim or defense. Except as otherwise provided in this Section, an agreement between an account debtor and an assignor not to assert against an assignee any claim or defense that the account debtor may have against the assignor is enforceable by an assignee that takes an assignment:

    (1) for value;

    (2) in good faith;

    (3) without notice of a claim of a property or possessory right to the property assigned; and

    (4) without notice of a defense or claim in recoupment of the type that may be

>   asserted against a person entitled to enforce a negotiable instrument under Section 3-305(a) [810 ILCS 5/3-305].

(c) When subsection (b) not applicable. Subsection (b) does not apply to defenses of a type that may be asserted against a holder in due course of a negotiable instrument under Section 3-305(b) [810 ILCS 5/3-305].

(d) Omission of required statement in consumer transaction. In a consumer transaction, if a record evidences the account debtor's obligation, law other than this Article requires that the record include a statement to the effect that the rights of an assignee are subject to claims or defenses that the account debtor could assert against the original obligee, and the record does not include such a statement:

>   (1) the record has the same effect as if the record included such a statement; and

>   (2) the account debtor may assert against an assignee those claims and defenses that would have been available if the record included such a statement.

(e) Rule for individual under other law. This Section is subject to law other than this Article which establishes a different rule for an account debtor who is an individual and who incurred the obligation primarily for personal, family, or household purposes.

(f) Other law not displaced. Except as otherwise provided in subsection (d), this Section does not displace law other than this Article which gives effect to an agreement by an account debtor not to assert a claim or defense against an assignee.

43.     Tex. Bus. & Com. Code § 9.403 provides:

Sec. 9.403. Agreement Not to Assert Defenses Against Assignee.

(a) In this section, "value" has the meaning provided in Section 3.303(a).

(b) Except as otherwise provided in this section, an agreement between an account debtor and an assignor not to assert against an assignee any claim or defense that the account debtor may have against the assignor is enforceable by an assignee that takes an assignment:

>   (1) for value;

>   (2) in good faith;

>   (3) without notice of a claim of a property or possessory right to the property assigned; and

>   (4) without notice of a defense or claim in recoupment of the type that may be asserted against a person entitled to enforce a negotiable instrument under Section 3.305(a).

(c) Subsection (b) does not apply to defenses of a type that may be asserted against a holder in due course of a negotiable instrument under Section 3.305(b).

(d) In a consumer transaction, if a record evidences the account debtor's obligation, law

other than this chapter requires that the record include a statement to the effect that the rights of an assignee are subject to claims or defenses that the account debtor could assert against the original obligee, and the record does not include such a statement:

> (1) the record has the same effect as if the record included such a statement; and
>
> (2) the account debtor may assert against an assignee those claims and defenses that would have been available if the record included such a statement.

(e) This section is subject to law other than this chapter that establishes a different rule for an account debtor who is an individual and who incurred the obligation primarily for personal, family, or household purposes.

(f) Except as otherwise provided in Subsection (d), this section does not displace law other than this chapter that gives effect to an agreement by an account debtor not to assert a claim or defense against an assignee.

44. Other states' versions of the sections do not materially differ.

45. Healthcare Finance Direct's demand that Plaintiff and other consumers continue payments for transactions in which all contracted goods and services were not provided, with knowledge that they were not provided, is a demand for money to which it is not entitled.

46. The statement on the Healthcare Finance Direct website that "your Retail Installment Contract and payment plan are still active and valid" is misleading, in that it implies that Plaintiff and other consumers must continue payments for transactions in which all contracted goods and services were not provided.

47. The statement on the Healthcare Finance Direct website that it is not responsible for down payments or other payments made to SmileDirectClub is false, in that such payments are not excluded under 16 C.F.R. part 433.

## CLASS ALLEGATIONS

48. Plaintiff brings this claim on behalf of a class and a subclass, pursuant to Fed.R.Civ.P. 23(a) and (b)(2) (Count I) and (b)(3) (other claims).

49. The class consists of (a) all individuals (b) who contracted with SmileDirectClub (c) whose contracts or payment obligations are held by Health Direct Financing (d) who did not receive all contracted goods and services. Persons with addresses in California are excluded.

7

50. The subclass consists of persons who reside in Illinois or contracted in Illinois.

51. Plaintiff may alter the class definitions to conform to developments in the case and discovery.

52. On information and belief, there are more than 100 class and subclass members, and the class and subclass are so numerous that joinder of all members is not practicable.

53. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

    a. Whether Defendant is entitled to demand and collect money from consumers who did not receive all contracted goods and services;

    b. Whether attempts to collect from such consumers violate the contracts;

    c. Whether attempts to collect from such consumers are unfair and deceptive;

    d. Whether representations that such consumers owe money are fraudulent at common law or under RICO.

54. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

55. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer litigation.

56. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

    b. Members of the class are likely to be unaware of their rights.

**COUNT I – DECLARATION OF RIGHTS
AND INJUNCTIVE RELIEF UNDER CONTRACTS**

57. Plaintiff incorporates paragraphs 1-56.

58. This claim is on behalf of the class against all Defendants.

59. There is a controversy between Plaintiff and the class, on the one hand, and Defendant, on the other, as to whether Plaintiff and the class members are obligated to continue payments notwithstanding a material lack of performance.

60. A declaratory judgment will resolve the controversy.

61. Injunctive relief is necessary to prevent Defendant from engaging in extrajudicial efforts to collect money to which it is not entitled.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class members and against Defendants:

> i. Declaring that Plaintiff and the class members are not obligated to pay without receiving full performance;
>
> ii. Enjoining Defendants from attempting to collect money from Plaintiff and class members who have not received full performance;
>
> iii. Awarding costs;
>
> iv. Awarding such other or further relief as the Court deems proper.

**COUNT II – CONSUMER FRAUD ACT**

62. Plaintiff incorporates paragraphs 1-56.

63. This claim is on behalf of the Illinois subclass and against all Defendants.

64. Defendants engaged in both unfair and deceptive acts and practices, in violation of 815 ILCS 505/2, by:

> a. Seeking and obtaining payment from Plaintiff and other persons who did not receive full performance;
>
> b. Misrepresenting and concealing the fact that Plaintiff and other persons who

did not receive full performance are not obligated to pay Defendant.

65. Defendants engaged in such conduct for the purpose of obtaining money from consumers.

66. Defendants engaged in such conduct in the course of trade and commerce in financial services.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class members and against Defendants:

    i. Declaring that Plaintiff and the class members are not obligated to pay without receiving full performance;

    ii. Enjoining Defendant from attempting to collect money from Plaintiff and class members who have not received full performance;

    iii. Awarding compensatory damages;

    iv. Awarding punitive damages;

    v. Awarding attorney's fees, litigation expenses and costs;

    vi. Awarding such other or further relief as the Court deems proper.

## COUNT III – COMMON LAW FRAUD

67. Plaintiff incorporates paragraphs 1-56.

68. This claim is on behalf of the class against all Defendants.

69. Defendant engaged in fraud by:

    a. Representing that Plaintiff and other persons who did not receive full performance were obligated to pay Defendant.

    b. Misrepresenting and concealing the fact that Plaintiff and other persons who did not receive full performance are not obligated to pay Defendant.

70. Defendant engaged in such conduct for the purpose of obtaining money from consumers.

71. Defendant engaged in such conduct in the course of trade and commerce in financial

services

.       WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class members:

      i. Declaring that Plaintiff and the class members are not obligated to pay without receiving full performance;

      ii. Enjoining Defendant from attempting to collect money from Plaintiff and class members who have not received full performance;

      iii. Awarding compensatory damages;

      iv. Awarding punitive damages;

      v. Awarding costs;

      vi. Awarding such other or further relief as the Court deems proper.

## COUNT IV – RICO

72.     Plaintiff incorporates paragraphs 1-56.

73.     This claim is on behalf of the class against Defendants Ronald Johnson, Tyler Johnson and Luke Johnson, and John Does 1-5, who are the RICO "persons."

74.     Healthcare Finance Direct, LLC is an "enterprise," in that it is a duly organized limited liability company. It is engaged in interstate commerce, in that it is based in California and financed transactions throughout the United States.

75.     Each of the Defendants Ronald Johnson, Tyler Johnson and Luke Johnson is associated with Healthcare Finance Direct, LLC, in that each is a manager or officer of the company. Does 1-5 are also officers and managing agents of Healthcare Finance Direct.

76.     Defendants each violated 18 U.S.C. §1962(c), in that, while associated with Healthcare Finance Direct, they conducted the affairs of Healthcare Finance Direct through a pattern of wire fraud, as defined in 18 U.S.C. §1343, by:

      a.    Representing that Plaintiff and other persons who did not receive full performance were obligated to pay Defendant.

      b.    Misrepresenting and concealing the fact that Plaintiff and other persons who did not receive full performance are not obligated to pay Defendant.

      c.    Inducing the making or continuation of payments via interstate wire transmissions.

77. Defendants engaged in such conduct for the purpose of obtaining money from consumers.

78. Defendants engaged in such conduct in the course of trade and commerce in financial services.

79. The conduct began in the fall of 2023, is continuing, and affected thousands of consumers.

80. 18 U.S.C. §1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

81. 18 U.S.C. §1343 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. . . . If the violation . . . affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

82. The interstate wire communications were used to effect repayment of the contracts, and consisted of submission of charges to credit cards and ACH debits from patients' bank

accounts.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i.    Actual damages;

    ii.    Treble damages;

    iii.    Attorney's fees, litigation expenses and costs of suit;

    iv.    Such other and further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 62070473)
Caileen M. Crecco (ARDC 6343265)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

## **JURY DEMAND**

Plaintiff demands trial by jury.

>*/s/ Daniel A. Edelman*
>Daniel A. Edelman

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

/s/ *Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

T:\40807\Pleading\Complaint_Pleading.WPD