IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARMEN CARRABIS, on behalf of Plaintiff and the class members described herein,<br><br>Plaintiff,<br><br>v.<br><br>HEALTHCARE FINANCE DIRECT, LLC; RONALD JOHNSON; TYLER JOHNSON; LUKE JOHNSON; and JOHN DOES 1-10,<br><br>Defendants. | Case No. 1:24-cv-4566<br><br>Hon. John Robert Blakey |

**MEMORANDUM OF LAW IN SUPPORT OF
HEALTHCARE FINANCE DIRECT, LLC'S MOTION TO DISMISS**

In November 2023, Carmen Carrabis purchased – and received – dental aligners from SmileDirectClub ("SDC"), which she financed under a Retail Installment Contract with SDC. After learning that SDC, which had filed for Chapter 11 bankruptcy protection ***before*** she purchased her aligners, was going to liquidate rather than reorganize as originally planned, Carrabis concocted a theory to avoid her payment obligations. Carrabis contends that SDC's bankruptcy means that she might not receive everything she believes was promised by SDC and that she now has "defenses" to paying SDC under her installment agreement. Not content to simply stop the automated credit card payments that she specifically authorized and/or seek a refund from SDC, Carrabis filed this lawsuit – not against SDC, which she knows is in bankruptcy, but against SDC's third-party payment processor, Healthcare Finance Direct, LLC.

That, in a nutshell, is what this case is about. And it demonstrates why Carrabis' declaratory judgment, consumer fraud and common law fraud claims against HFD are legally baseless. Carrabis' Complaint is nothing more than a contract dispute between Carrabis and SDC. Whatever views Carrabis may harbor about the status of her contract with SDC given SDC's

bankruptcy, and whatever "defenses" to continued payment (or any payment at all) Carrabis believes she may now have, those are solely contract issues between Carrabis and SDC (and, possibly, the bankruptcy court that oversaw SDC after its bankruptcy filing). They have nothing to do with HFD.

To the contrary, no matter how much Carrabis pretends otherwise, there is nothing illegal, improper, fraudulent or otherwise actionable about HFD processing the payments for Carrabis' aligners that she expressly authorized HFD to process under her contract with SDC. Nor is there anything illegal, improper, fraudulent or otherwise actionable about HFD telling Carrabis that those payments – for aligners that she admittedly received – would continue. For these and other reasons explained below, Carrabis' Complaint fails to state any legally valid claim for relief against HFD and should be dismissed, with prejudice.

## COMPLAINT ALLEGATIONS

Carrabis' Complaint is sparse and conclusory. The allegations are not only internally inconsistent, but they are inconsistent with the exhibits attached and matters of public record of which the Court may properly take judicial notice. Briefly, the relevant facts are as follows:

### A. Carrabis' Purchase of Dental Aligners from SDC

Carrabis alleges that she is a resident of Chicago, who formerly resided in Texas. Compl. ¶ 4. Carrabis alleges that while living in Texas, she contracted with SDC for dental aligners and services for $3,800. *Id.* at ¶¶ 12, 14. Carrabis alleges that she purchased the aligners in "late 2023," *id.* at ¶ 12, and made a downpayment on November 11, 2023, *id.* ¶ 21. Carrabis alleges that she received her aligners "later in November 2023." *Id*. Carrabis does not allege that her aligners were defective in any way or that she has been unable to fully and properly use them.

Although Carrabis purports to make contentions about the scope of her alleged contract with SDC – including the scope of supposed "services" to be provided, *see, e.g., id.* at ¶¶ 12, 13,

45, and that "financing" was provided by HFD, *id*. at ¶ 15 – Carrabis does not attach her contract to the Complaint. Carrabis alleges that she has been "unable" to obtain a copy of her contract, *id*. at ¶ 19, and instead attaches an "example," which she alleges is the form "typically used by [SDC]." *Id*. at ¶ 20, Ex. B.

HFD has obtained a copy of Carrabis' contract.[1] Ex. 1, Razo Decl. ¶ 2, Ex. A. That agreement, titled "Retail Installment Contract," establishes that Carrabis purchased her aligners on November 11, 2023, for $3,150, plus finance charges. Although the line for the counterparty (the "Provider") is not filled in, the entirety of the contract makes clear that it is between Carrabis as "Buyer" and SDC as the "Provider." *Id*. SDC is also the "Provider" in the example contract attached to the Complaint. *Id*. at Ex. C.

HFD is not identified as a "Provider" under Carrabis' contract and is not a party to the contract at all (nor is HFD a party to the example Carrabis attaches). *Id.* Instead, the contract specifically identifies HFD as SDC's "payment processor," and contains an express acknowledgement that HDC merely serves in that role:

> **Relationship of the Parties.** Buyer acknowledges and agrees that HFD is not a lender but rather the payment processing service provider of Provider.

Ex. 1, Razo Decl. ¶ 2, Ex. A.

Carrabis signed the contract, expressly representing that she had reviewed and agreed to its terms.[2] *Id*. Carrabis also authorized "automatic ongoing payments" by credit card,

---

[1] For purposes of HFD's motion, [i]t is well settled" that the Court may properly consider documents, such as Carrabis' contract, that are referred to in the Complaint and are "central" to Carrabis' claims. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

[2] In the Complaint, Carrabis alleges "upon information and belief" that HFD was "assigned" her contract. Compl. ¶ 16. Carrabis, however, alleges no facts upon which that purported "belief" is based, which is glaring given the extensive information about SDC's actual business practices available in SDC's bankruptcy record and SEC filings. *See, e.g.*, *Peregrine Options, Inc. v. Farley, Inc.*, No. 90 C 285, 1993 WL 489739, at *19 (N.D. Ill. Nov. 19, 1993) ("[w]hen allegations are based on information and belief, the complaint must allege the facts on which the belief is founded"). In any event, as Carrabis' contract, the

"authoriz[ing] HFD, on behalf of Provider [*i.e.*, SDC]" to "directly charge the Monthly Payments owed, any late fees, or returned item fees on the credit card Buyer has provided," and agreed that Carrabis' "authorization would remain in effect until [Carrabis] has cancelled it." *Id.* at p.3

Carrabis does not allege that she ever revoked her authorization to process payments on her credit card. Consistent with her contract and authorization, Carrabis alleges that her credit card was charged $106.47 per month, starting on December 27, 2023 and continuing through May 2, 2024. Compl. ¶ 26.

B. **SDC's September 29, 2023 Bankruptcy**

On September 29, 2023, SDC (and affiliates) filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code. *In re SmileDirectClub, Inc.*, No. 23-90786 (CML), United States Bankruptcy Court, Southern District of Texas, at Dkt. No. 1.[3] Chapter 11 of the Code provides for the reorganization, rather than liquidation, of a debtor through bankruptcy and permits the debtor to continue operating while the bankruptcy/reorganization proceeds – typically, as a "debtor in possession."[4]

SDC's bankruptcy filing is central to Carrabis' Complaint. The premise of her allegations of supposed misconduct and wrongdoing stem from her contentions about the purported effect of SDC's bankruptcy on her contractual obligations and the ongoing payments she authorized to be

---

"example" contract she attaches to the Complaint as Exhibit B, and the description of HFD as simply a third-party contractor to SDC in Exhibit C all establish, HFD was not and is not a party to her contract, refuting any (incorrect) "information and belief" hypothesis to the contrary. *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chicago*, 927 F.2d 988, 991 (7th Cir. 1991) (exhibits attached to complaint prevail over inconsistent allegations).

[3] A court may properly take judicial notice of the dockets in related federal cases. *Amling v. Harrow Indus. LLC*, 943 F.3d 373, 376 (7th Cir. 2019) (a court may take notice of the docket of related federal cases). Orders entered and filings made in other courts are also properly subject to judicial notice. *See United States v. Stevens*, 500 F.3d 625, 628 n. 4 (7th Cir. 2007); *Boyd v. U.S. Bank, N.A., ex rel. Sasco Aames Mortg. Loan Tr., Series 2003-1*, 787 F. Supp. 2d 747, 749–50 (N.D. Ill. 2011).

[4] 11 U.S.C. § 1101, *et seq*.

made. Essentially, Carrabis contends that HFD acted improperly when it continued to process payments on Carrabis' credit card after SDC's bankruptcy and when HFD supposedly later advised Carrabis to continue paying for the aligners she received. *See id*. at ¶¶ 23-26, 31-33, 36, 38.

Carrabis, however, purchased her aligners and entered into her Retail Installment contract with SDC on November 11, 2023 – more than a month after SDC had filed for bankruptcy. Consistent with its Chapter 11 filing, SDC's bankruptcy court docket reveals that SDC filed a slew of "first day" motions on September 29, 2023. *In re SmileDirectClub, Inc.*, at Dkt. Nos. 2-18. These motions were, collectively, designed to obtain the authorizations necessary for SDC to continue its business operations as it had before bankruptcy. *See id*. Continuing in business necessarily included continuing SDC's primary business selling dental aligners and entering into agreements with customers.

The bankruptcy court granted SDC's various motions on October 2, 2023. *See Id*. at Dkt. Nos. 28, 36, 38, 60-70. As a result, on November 11, 2023 when Carrabis purchased her aligners, made her $500 downpayment, signed her contract with SDC and authorized her credit card to be charged for the ongoing payments, SDC was authorized to continue to sell dental aligners and enter into contracts with customers such as Carrabis for which HFD processed payments – including the payments Carrabis alleges began on December 27, 2023.

SDC's plans to reorganize ultimately failed and, on January 26, 2024, SDC's bankruptcy cases were converted to cases under Chapter 7 of the bankruptcy code (liquidation). *Id*. at Dkt. No. 617.

C. **Carrabis' Claims**

Based solely on the fact that she continues to allow her credit card to be charged (as she authorized) for the payments due under the terms of her November 11, 2023 Retail Installment Contract with SDC, Carrabis purports to assert four claims in this lawsuit – three of which are

asserted against HFD: (i) declaratory/injunctive relief (Count I); (ii) violation of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") (Count II); and (iii) common law fraud (Count III). Carrabis' fourth claim, for "racketeering" under the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count IV), is asserted only against defendants Richard Johnson, Tyler Johnson and Luke Johnson, whom Carrabis alleges are "managers" and/or officers of HFD. Compl. ¶¶ 8-10.

The premise underlying all of Carrabis' claims are her allegations about SDC's bankruptcy and its supposed effect on her contractual payment obligations. Even though Carrabis has the aligners she purchased and has never revoked her authorization to have her credit card charged for those aligners, Carrabis nonetheless claims that it is "fraudulent" and "deceptive" for HFD to process Carrabis' credit card payments.

## ARGUMENT

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint, however, must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must plead facts "sufficient to make the claim of unlawful conduct—*i.e.,* that the plaintiff is 'entitled to relief'"— plausible." *Id*. at 555-56. Factual conclusions are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."). Nor are legal conclusions. *Id*. ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Only "well-pleaded factual allegations" may be credited in determining whether a complaint "plausibly give[s] rise to an entitlement to relief." *Id*. "[W]here the well-pleaded facts

do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Id. citing* Fed. R. Civ. P. 8(a)(2).

In addition, Counts II and III purport to assert claims against HFD for consumer fraud and common law fraud. Although these counts, in reality, are nothing more than contract claims based on Carrabis' Retail Installment Contract with SDC, claims sounding in fraud are subject to the heightened pleading requirements of Rule 9(b). Under that rule a party alleging fraud "must state, with particularity, the circumstances constituting the fraud." Fed. R. Civ. P. 9(b). "This means the who, what, when, where and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

## I. CARRABIS FAILS TO STATE A CLAIM FOR DECLARATORY/INJUNCTIVE RELIEF

In Count I, Carrabis asserts a claim for what she terms "declaration of rights and injunctive relief under contracts." Compl. at p. 9. The four conclusory allegations of Count I (following its boilerplate incorporation of all prior allegations) do not identify the legal basis for Carrabis' claim. Compl. ¶¶ 58-61. Declaratory judgments in federal court are governed by 28 U.S.C. § 2201. That statute provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 22 U.S.C. § 2201.

Count I fails to state a valid claim for declaratory and/or injunctive relief for numerous reasons. Chief among these is that Carrabis' "dispute" with HFD has already ripened into a lawsuit in which Carrabis asserts substantive claims for consumer fraud and common law fraud against HFD (and for racketeering against others) based on the same alleged contract for which she seeks

declaratory relief. Indeed, Carrabis seeks the exact same "declaration" in Counts II and III – "Declaring that Plaintiff . . . [is] not obligated to pay without receiving full performance" – that she purports to seek in Count I. Compl. at p. 10 (ICFA), 11 (fraud). The same is true for the purported "injunctive relief" Carrabis seeks. Although Carrabis does not identify any legal basis for a court to award injunctive relief as part of her declaratory judgment claim in Count I, Counts II and III seek the exact same injunction. *Id*.

It is well-settled that where "the substantive suit would resolve the issues raised by the declaratory judgment action, the declaratory judgment action 'serves no useful purpose' because the controversy has 'ripened' and the uncertainty and anticipation of litigation are alleviated." *Intercon Solutions, Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1065 (N.D. Ill. 2013) (internal citations and quotations omitted) (collecting cases); *see also Nielsen Co. (US), LLC v. Truck Ads, LLC*, No. 08 C 6446, 2011 WL 221838, at *5 (N.D. Ill. Jan. 24, 2011). That is the case here and Count I should be dismissed for this reason alone.[5]

Count I should also be dismissed because Carrabis has not plausibly alleged an "actual controversy" between Carrabis and HFD. Section 2201 "allows federal courts, in their discretion, to render declaratory judgments **only** where there exists an 'actual controversy.'" *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 627 (7th Cir. 1995) (internal citations omitted) (emphasis added). An actual controversy exists when "the facts alleged, under all the circumstances, show that there is a (1) substantial controversy, (2) between parties having adverse legal interests (3) of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* Absent facts establishing an "actual controversy" between the parties, a declaratory

---

[5] Courts routinely dismiss declaratory judgment claims that are duplicative of substantive claims. *See e.g., Cohn v. Guaranteed Rate Inc.*, 130 F. Supp. 3d 1198, 1206 (N.D. Ill. 2015); *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 778 (N.D. Ill. 2008).

judgment is not warranted. *Geisha, LLC v. Tuccillo*, 525 F. Supp. 2d 1002, 1013 (N.D. Ill. 2007) (declaratory relief is not appropriate if it would only be "an opinion advising what the law would be upon a hypothetical state of facts").

That is also the case here. Carrabis' allegations do not establish an actual controversy between Carrabis and HFD. In her November 2023 post-bankruptcy contract with SDC, Carrabis specifically authorized HFD to process her monthly payments to SDC on the credit card she identified and agreed in writing that her authorization would remain in effect until she canceled it. Ex. 1, Razo, Decl. ¶ _2, Ex. A at 3. Carrabis does not allege that she ever canceled that authorization or even threatened to cancel it, nor does she allege that HFD ever threatened Carrabis with any adverse action or consequence should she do so.

Simply put, the "facts" alleged in the Complaint do not establish any "actual controversy" between Carrabis and HFD at all, let alone a controversy that is appropriate for declaratory relief. To the contrary, the only reason to presume any "controversy" exists is that Carrabis filed suit accusing HFD of consumer fraud and common law fraud for processing the payments she authorized – which renders any claim for declaratory relief "of no useful purpose" and inappropriate in any event.

**II. CARRABIS FAILS TO STATE A CLAIM AGAINST HFD FOR CONSUMER FRAUD**

In Count II, Carrabis asserts a claim for violation of 815 ILCS 505/2 of the Illinois Consumer Fraud and Deceptive Business Practices Act. Compl. ¶¶ 62-44. "To state a claim under the Consumer Fraud Act, a plaintiff must allege: "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) that the deception occurred in the course of conduct involving trade or commerce; and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Aliano v. Ferriss*, 988 N.E.2d 168, 176 (Ill. App. 1st Dist.

2013). Like all claims sounding in fraud, claims under the ICFA are subject to the heightened pleading requirement of Rule 9(b). *Costa v. Mauro Chevrolet, Inc.*, 390 F.Supp.2d 720, 731 (N.D. Ill. 2005) ("A complaint alleging a violation of the Illinois [Consumer] Fraud Act must be pled with the same particularity and specificity as that required under common law fraud under Rule 9(b).")

Carrabis fails to state a claim against HFD under the ICFA for myriad reasons.

### A. Carrabis Cannot Premise an ICFA Claim on the Alleged Breach of Her Contract With SDC

As a threshold matter, Count III fails outright because Carrabis' ICFA claim is nothing more than a contract dispute between Carrabis and SDC. Illinois law is clear that claims based on an alleged breach of contract are not actionable under the ICFA. *Langendorf v. Conseco Senior Health Ins. Co.*, 590 F. Supp. 2d 1020, 1022 (N.D. Ill. 2008). As a result, "[w]hen consumer fraud is alleged in a contractual setting, the plaintiff must instead point to deceptive actions or practices distinct from any underlying breach of contract," meaning that the alleged fraud and contractual breach cannot "rest on the same factual foundation." *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011).

Here, Carrabis' Complaint establishes that her ICFA claim as alleged in the Complaint is based entirely on her Retail Installment Contract: Carrabis alleges that she has not received, or will not receive as a result of SDC's bankruptcy, the full benefit of her purported contract with SDC. Compl. ¶¶ 12, 25. Based on this factual foundation, Carrabis alleges that she now has "defenses" to making payments under that contract with SDC, making it improper for HFD to process the very payments she expressly authorized. That is a claim based on Carrabis' rights and obligations under her contract with SDC, pure and simple. As the Illinois Supreme Court has made clear, such contract-based allegations cannot give rise to a claim under the ICFA:

SGR/71298271.1

> What plaintiff calls 'consumer fraud' or 'deception' is simply defendants' failure to fulfill their contractual obligations. Were our courts to accept plaintiff's assertion that promises that go unfulfilled are actionable under the Consumer Fraud Act, consumer plaintiffs could convert any suit for breach of contract into a consumer fraud action. However, it is settled that the Consumer Fraud Act was not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy. We believe that a 'deceptive act or practice' involves more than the mere fact that a defendant promised something and then failed to do it. That type of 'misrepresentation' occurs every time a defendant breaches a contract.

*Avery v. State Farm Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005).

### B. Carrabis' ICFA Claim Against HFD Fails for Other Reasons as Well

Carrabis' ICFA claim also fails because Carrabis fails to plausibly allege any unfair or deceptive act or practice by HFD, let alone any such act or practice that proximately caused Carrabis any injury. Carrabis alleges two supposedly deceptive acts by HFD: (i) "[s]eeking and obtaining payment from Plaintiff . . . who did not receive full performance;" and (ii) "[m]isrepresenting and concealing the fact that Plaintiff . . . who did not receive full performance [is] not obligated to pay [HFD]." Compl. ¶ 64. Neither constitutes an unfair or deceptive practice by HFD under the ICFA.[6]

As for "seeking and obtaining payment" from Carrabis, the contract Carrabis entered into with SDC establishes that Carrabis specifically authorized HFD to process her credit card payments to SDC until she canceled that authorization. Carrabis does not allege that she ever did

---

[6] Although Carrabis uses the term "unfair" in Count II, *see* Compl. ¶ 64, Carrabis does not allege any facts – violations of public policy, immoral, unethical, oppressive, or unscrupulous conduct, substantial injury to Illinois consumers – required to support a claim for "unfair business practices" Illinois law. *See, e.g., Robinson v. Toyota Motor Credit Corp.* , 775 N.E.2d 951, 960-61 (Ill. 2002) (stating requirements); *Sklodowski v. Countrywide Home Loans, Inc*., 832 N.E.2d 189, 197 (Ill. App. 1st Dist.2005) (where plaintiff does not plead facts to support any of the three unfairness criteria, allegations do not state a claim for a violation of the ICFA). And, where a plaintiff alleges both deception and unfairness yet allege facts that relate only to deception, courts focus on the deception prong and disregard the unfairness prong. *See Sanchez v. Wal-Mart Inc.*, No. 23 CV 1297, 2024 WL 2132426, *6 (N.D. Ill. May 13, 2024) (where plaintiff does not parse which of her claims allege fraudulent versus non-fraudulent conduct and allegations based on allegedly deceptive conduct, court analyzed only whether defendant's conduct was deceptive rather than unfair.).

so. Whether Carrabis believes that she has not received, or ultimately will not receive, "full performance" from SDC under that contract is irrelevant to whether HFD remains contractually authorized *by Carrabis* to process her payments. Doing so does not – and cannot – constitute an unfair or deceptive act or practice by HFD under the ICFA. *See HSBC Bank USA, Natl. Assn. v. Davis*, No. 1:12-CV-06801, 2017 WL 1208378, at *5 (N.D. Ill. Apr.3, 2017) (plaintiff's ICFA claim failed in part, because the defendants merely "comported with the language of the governing contracts").

The same is true for HFD allegedly "[m]isrepresenting and concealing the fact" that Carrabis is "not obligated to pay [HFD]." Compl.¶ 64. For one, the supposed "fact" that HFD is accused of "mispresenting" and/or "concealing" is not really a "fact" at all. It is, at best, a lay or legal opinion – neither of which is sufficient to state an actionable claim or fraud or deception under Illinois law. *See Merrilees v. Merrilees*¸ 998 N.E.2d 147, 159-160 (Ill. App. 1st Dist. 2013) (opinion, including legal opinions, not actionable material statements of fact); *West v. W. Cas. and Sur. Co.,* 846 F.2d 387, 393 (7th Cir. 1988) (statement that merely expresses an opinion or that relates to future or contingent events, rather than past or present facts, does not constitute an actionable misrepresentation for purposes of fraud) (applying Illinois law).

But just as importantly, Carrabis does not allege any supposed untrue statement or material omission (*i.e.*, "concealment") by HFD that proximately caused her any injury. Although Carrabis takes care to (inaccurately) reference statements allegedly found on HFD's website,[7] she does not

---

[7] For example, citing HFD's website, Carrabis alleges that HFD "has taken the position that unless no aligner were provided at all, the consumer must continue to pay [HFD]." Compl. ¶ 31. Similarly, Carrabis alleges that [HFD's] statement imply that persons who received aligners but did not complete the professional services must continue paying." *Id*. at ¶ 36. Neither allegation is accurate, as Exhibit C demonstrates. The first supposed "position" by HFD is not set forth anywhere on Exhibit C. Compl. Ex. C. And as for the second, Exhibit C expressly states that customers who received aligners and "completed their treatment" should continue to pay. *Id*. Although Carrabis does not allege that she ever saw any of the statements on Exhibit C, nothing on that website that Carrabis complains about is an actionable statement of fact. Rather, they are all non-actionable statements of opinion. Carrabis does not identify a single *factual*

allege that she ever even visited that website, much less that she saw any statements on that website or that anything said – or not said – on the website proximately caused Carrabis any injury.

The only contact Carrabis alleges she had with HFD was a telephone call in March 2024, during which Carrabis alleges "she was told that she had to continue making payments." Compl. ¶ 38. Carrabis does not allege any details of this purported conversation, much less specific facts required to state a claim for fraud under Fed. R. Civ. P. 9(b). Carrabis does not allege how the conversation came about (who called whom), why it came about, what Carrabis said to the person at HFD and/or what specific words that person said to her or in what context (*e.g.*, in response to something Carrabis said or in some other context.). Even putting aside the non-actionable nature of the alleged representation (legal opinion) as described, Carrabis cannot premise an ICFA claim (or common law fraud claim) against HFD on such a vague and conclusory allegation as a matter of law.

Moreover, Carrabis does not allege that any purported statement by HFD in March 2024 proximately caused her any injury. Carrabis had already contractually authorized HFD to process contract payments on her credit card in November 2023. Carrabis does not allege that she called HFD in March 2024 to cancel that authorization, or that HFD responded to any such cancelation notice and/or convinced Carrabis not to do so. Even if HFD's alleged statement to Carrabis was an actionable statement of "fact" (and it is not), Carrabis still does not allege that it proximately caused Carrabis any injury. *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160-161 (Ill. 2002) ("a

---

representation on Exhibit C that is false or inaccurate in any way. *See, e.g., Bohen v. ConAgra Brands, Inc.*, No. 23 C 1298, 2024 WL 1254128, at *7 (N.D. Ill. Mar. 25, 2024) (where statement is factually true, it is not actionable as a deceptive or misleading statement); *Castaneda v. Amazon.com, Inc.*, 679 F. Supp. 3d 739, 748-49 (N.D. Ill. 2023) (lack of false statement reason for dismissal of ICFA claim); *Fuchs v. Menard, Inc.*, No. 17-CV-01752, 2017 WL 4339821, at *3 (N.D. Ill. Sept. 29, 2017) ("a court may dismiss an ICFA claim at the pleading stage if the statement is 'not misleading as a matter of law.'") (*quoting Ibarrola v. Kind, LLC*, 83 F.Supp.3d 751, 756 (N.D. Ill. 2015)), *appeal filed.*

private cause of action brought under [ICFA] requires proof of 'actual damage.' ... [and] proof that the damage occurred 'as a result of' the deceptive act or practice." (citations omitted))

### III. COUNT III FAILS TO STATE A CLAIM FOR COMMON LAW FRAUD

In Count III, Carrabis asserts a claim for common law fraud. Compl. ¶¶ 67-71. To state a claim for fraud in Illinois, a plaintiff must allege that the defendant (1) made a false statement of material fact, (2) knew the statement was false, (3) intended that the statement induce the plaintiff to act, (4) plaintiff did act in reliance on the statement, and (5) plaintiff was damaged from her reliance on the statement. *Connick v. Suzuki Motor Co., Ltd.,* 675 N.E.2d 584, 591 (Ill. 1996). Carrabis alleges that HFD committed fraud by: (i) "[r]epresenting that Plaintiff . . . who did not receive full performance [was] obligated by pay [HFD]"; and (ii) "[m]isrepresenting and concealing the fact that Plaintiff . . . who did not receive full performance [is] not obligated to pay [HFD]." Compl. ¶ 69. These allegations mirror the allegations of consumer fraud in Count II and Count III fails for the same reasons that Count II fails.

As in Count II, Carrabis does not allege that she ever saw any statements on HFD's website at all, and thus does not allege that she relied on any such statements (or omissions) or suffered any injury as a result. The entire premise for Carrabis' "misrepresentation" or "concealment" contention in Count III is again that HFD supposedly told Carrabis in a telephone conversation to continue paying under her contract with SDC). Compl. ¶ 38. That allegation, which to repeat is not pled with anywhere near the specificity required by Rule 9(b), is a statement of opinion, not fact, and cannot support a claim for fraud. *Merrilees¸* 998 N.E.2d at 159-160; *Partlow,* 2018 WL 5312335, at *3-4; *W. Cas. and Sur. Co.,* 846 F.2d at 393. In addition, Carrabis does not allege that she relied in any way on that alleged statement or anything else said to her during the conversation or suffered any injury as a result.

## IV. THE VOLUNTARY PAYMENT DOCTRINE BARS ANY CLAIMS BY CARRABIS AGAINST HFD

Even if there were some legal basis for Carrabis to assert claims against HFD based on her contract dispute with SDC, and there is not, any such claim would necessarily be barred by the voluntary payment doctrine. The voluntary-payment doctrine bars any cause of action that seeks to recover a payment made upon a claim of right, whether that claim is premised on a contractual relationship or a statutory obligation. *Harris v. ChartOne*, 841 N.E.2d 1028, 1031 (Ill. App. 1st Dist. 2005). That doctrine applies to Carrabis' causes of action against HFD in this lawsuit.

As Carrabis' Complaint and Retail Installment Contract establish, HFD has been, and remains, authorized **by Carrabis** to process the installment payments to SDC for Carrabis' dental aligners. As demonstrated above, there is no fraud, misrepresentation or other "deception" involved in HFD's continuing to do so; Carrabis' contract specifically provides that those payments will be processed. Carrabis entered into her contract with SDC after SDC had already filed for bankruptcy, and Carrabis specifically alleges that she knows that payments are being processed despite SDC's bankruptcy. And the only purported "statement" Carrabis alleges was made to her by HFD is that her contract payments should continue – a clear claim of right by HFD.

Based on these facts, Carrabis cannot recover from HFD any payments that Carrabis made to SDC. Whether Carrabis has some claim for breach of contract or other violation by SDC for which money could be recovered is a different matter for a different lawsuit. But any claim Carrabis might assert against HFD is barred by the voluntary payment doctrine.

## CONCLUSION

For all of the foregoing reasons, Carrabis Complaint fails to state a claim against Healthcare Finance Direct, LLC upon which relief may be granted and should be dismissed, with prejudice.

Dated: August 26, 2024                    Respectfully submitted,


                                          *s/ James J. Boland*
                                          James R. Figliulo
                                          James J. Boland
                                          Smith Gambrell Russell LLP
                                          311 South Wacker Drive, Suite 3000
                                          Chicago, Illinois 60601-6677
                                          Tel: (312) 360-6000
                                          Fax: (312) 360-6520


                                          *Attorneys for defendant Healthcare Finance Direct, LLC*

- 16 -

SGR/71298271.1