IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARMEN CARRABIS,<br>on behalf of Plaintiff and the<br>class members described herein,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>HEALTHCARE FINANCE<br>DIRECT, LLC;<br>and JOHN DOES 1-10,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)　1:24-cv-04566<br>)　Judge Blakey<br>)<br>)<br>)<br>)<br>)<br>) |

**AMENDED COMPLAINT – CLASS ACTION**

**INTRODUCTION**

1. Plaintiff Carmen Carrabis brings this action to secure redress for the conduct of HealthCare Finance Direct, LLC in inducing and coercing payment for goods and services not provided.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction under 28 U.S.C. §1332(d). There are more than 100 class members. The amount in controversy on a classwide basis exceeds $5 million, exclusive of interest and costs.

3. Personal jurisdiction and venue in this District are proper because (a) Plaintiff resides in this District, and (b) Defendant is seeking and obtaining payments from Plaintiff in this District.

**PARTIES**

4. Plaintiff Carmen Carrabis is presently a resident of Chicago. She formerly resided in Texas.

5. Defendant Healthcare Finance Direct, LLC is a limited liability company organized under California law with its principal address at 1707 Eye Street, Suite 300, Bakersfield, CA 93301. Its registered agent is Tyler Johnson at that address.

1

6. Ronald Johnson, Tyler Johnson and Luke Johnson are the three managers of Healthcare Finance Direct, LLC. Each is a citizen of California.

7. Defendant Healthcare Finance Direct, LLC is engaged in the business of providing and arranging financing for medical and dental treatment and collecting periodic payments from patients. Healthcare providers arrange for Healthcare Finance Direct, LLC to finance their patients' transactions. (Exhibit A)

8. Defendant Healthcare Finance Direct, LLC states on its website that it has served over 1 million patients. It continues to finance and collect from tens of thousands of patients.

9. Defendants John Does 1-10 are other persons and entities involved in the conduct complained of herein.

## FACTS

10. In late 2023, Plaintiff contracted with SmileDirectClub for dental alignment goods and services for $3800. The services included the provision of aligners plus continuous support and periodic visits to a dentist designated by SmileDirectClub to make sure the aligners were working properly. There was a lifetime warranty on the aligners.

11. The continuous support, periodic visits to a dentist and lifetime warranty were standard features offered by SmileDirectClub.

12. Plaintiff undertook to pay for the goods and services via SmileDirectClub's "SmilePay" financing.

13. According to the last annual report on SEC Form 10-K filed by SmileDirectClub before its bankruptcy, that for the year ending December 31, 2022, "approximately 60% of our customers have elected to purchase our clear aligners using SmilePay, which does not require a credit check. With SmilePay, a $250 down payment is required up front, which covers the cost of manufacturing the aligners. The remaining cost is financed over 26 months at an average monthly cost of $89 per month." (Original page 5) "As of December 31, 2022, SmilePay amounted to approximately $187.0 million in net receivables . . . ." (Original page 36)

14. The visits to a dentist and warranty were a material part of the consideration for Plaintiff's purchase.

15. Plaintiff lived in Texas at the time but subsequently moved to Illinois, where she now resides.

16. Plaintiff executed a retail installment contract to pay for the treatments pursuant to the SmilePay program.

17. Healthcare Finance Direct undertook to collect payments for the treatments.

18. Healthcare Finance Direct has not disclosed who owns the debt or who it is collecting payments for.

19. Either:

    a. the retail installment contract or the right to collect payments under it was assigned to Healthcare Finance Direct, or

    b. Healthcare Finance Direct contracted to collect payments on the contract;

    c. the retail installment contract was assigned to an unknown entity for which Healthcare Finance Direct is collecting payments.

20. Healthcare Finance Direct is thus the agent of an undisclosed principal or a principal that is not fully disclosed.

21. Plaintiff had no relationship with Healthcare Finance Direct prior to dealing with SmileDirectClub.

22. On September 29, 2023, SmileDirectClub had filed for Chapter 11 bankruptcy. It began liquidation in December 2023.

23. Plaintiff has been unable to obtain a copy of her contract with SmileDirectClub. Plaintiff accessed the website of Healthcare Finance Direct, but was unable to access her account containing her documents.

24. Plaintiff signed electronically a retail installment contract that was completely filled out.

25. Exhibit B is an example of the retail installment contract form typically used by SmileDirectClub.

26. Plaintiff paid a $500 down payment to SmileDirectClub, by credit card, on November 11, 2023.

27. Plaintiff received the aligners later in November 2023, after some delay.

28. The aligners did not fit well.

29. At the time Healthcare Finance Direct began collecting Plaintiff's obligation, SmileDirectClub had already filed for bankruptcy. Healthcare Finance Direct and its managers knew that continuous visits and a lifetime warranty were standard features offered by SmileDirect Club to all customers, and that Plaintiff and other consumers would never receive the full bargained-for consideration under their contracts.

30. On January 17, 2024, SmileDirectClub emailed a form "notice of discontinuation of treatment" to Plaintiff. (Exhibit C) The same email was sent to thousands of other consumers that had contracts with SmileDirectClub.

31. Even before its bankruptcy filing, there were numerous complaints about the quality of the dental goods and services provided by SmileDirectClub.

32. Thousands of consumers have filed claims or complaints asserting that SmileDirectClub provided deficient goods and services. The Better Business Bureau alone received 1,762 complaints during 2021-early 2024. Over 1,400 consumers have initiated arbitrations against SmileDirectClub.

33. The number of consumer complaints is understated because SmileDirectClub used nondisclosure agreements to manipulate online reviews and keep customers from reporting negative experiences to regulatory officials, at least until it was sued for such conduct by the District of Columbia in late 2022. (Exhibit D) In June 2023 SmileDirectClub signed a consent order with the District of Columbia in which it agreed to release over 17,000 customers from nondisclosure agreements they were required to sign as a condition of receiving partial refunds on account of not

receiving performance under their contracts.

34. On information and belief, based on dates in consumer complaints, Healthcare Finance Direct has been collecting payments from SmileDirectClub customers at least as far back as 2021.

35. On information and belief, Healthcare Finance Direct is collecting payments from more than 50,000 customers of SmileDirectClub, and will continue doing so until their contracts expire.

36. Since continued treatments and lifetime warranties are part of all SmileDirectClub contracts, none of these customers will receive 100% of what they contracted for.

37. Healthcare Finance Direct is also collecting payments from thousands of other non-SmileDirectClub consumers. While SmileDirectClub was a major customer of Healthcare Finance Direct, it is by no means the only one.

38. Healthcare Finance Direct continued collecting SmileDirectClub contracts on which Plaintiff and other consumers were obligated, knowing that the bargained for consideration had not been and would not be received by the consumers.

39. SmileDirectClub never completed the services for which Plaintiff contracted.

40. Healthcare Finance Direct continued charging Plaintiff's credit card account for payments. Plaintiff's account was charged for $106.54 on December 27, 2023, January 27, 2024, February 27, 2024, March 27, 2024 and May 2, 2024.

41. Other members of the class defined below similarly had monthly payments charged to their credit or debit cards.

42. Healthcare Finance Direct sought to have Plaintiff and class members pay via credit or debit card.

43. Healthcare Finance Direct has taken the position that unless no aligners were provided at all, the consumer must continue to pay Healthcare Finance Direct. (Exhibit E).

44. Healthcare Finance Direct states on its website that "your Retail Installment

5

Contract and payment plan are still active and valid." (Exhibit E)

45. The statement on the Healthcare Finance Direct website that "your Retail Installment Contract and payment plan are still active and valid" is misleading, in that it implies that Plaintiff and other consumers must continue payments for transactions in which all contracted goods and services were not provided, until all payments are made.

46. The website also states that Healthcare Finance Direct is not responsible for down payments or other payments made to SmileDirectClub. (Exhibit E).

47. In addition, the lifetime warranty will not be honored.

48. Healthcare Finance Direct's other communications with patients are consistent with those on the website.

49. Healthcare Finance Direct's statements imply that persons who received aligners but did not complete the professional services must continue paying.

50. The statements on the website are still present as of August 30, 2024.

51. In April 2024 Plaintiff called the customer service number listed by Healthcare Finance Direct to complain that she had not received everything she had paid for. She asked if she could receive a discount because of that. The customer service representative told her that no discounts would be given, and that she had to continue making monthly payments on time.

52. On information and belief, the employees of Healthcare Finance Direct have been given scripts with which to deal with consumer inquiries, and the statements to Plaintiff during her call were taken from those scripts.

53. It is the policy and practice of Healthcare Finance Direct to force consumers to pay contracted amounts for healthcare goods and services even though they have not received the goods and services contracted for.

54. As of October 1, 2024, Healthcare Finance Direct continues to dun Plaintiff for amounts allegedly owed under the contract.

55. Plaintiff requested a copy of her contract, but did not receive one.

56.     16 C.F.R. §433.2 provides:

Preservation of consumers' claims and defenses, unfair or deceptive acts or practices.

In connection with any sale or lease of goods or services to consumers, in or affecting commerce as "commerce" is defined in the Federal Trade Commission Act, it is an unfair or deceptive act or practice within the meaning of section 5 of that Act for a seller, directly or indirectly, to:

(a)     Take or receive a consumer credit contract which fails to contain the following provision in at least ten point, bold face, type:

NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

or,

(b)      Accept, as full or partial payment for such sale or lease, the proceeds of any purchase money loan (as purchase money loan is defined herein), unless any consumer credit contract made in connection with such purchase money loan contains the following provision in at least ten point, bold face, type:

NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

57.     On information and belief, the contract contains the required statement. However, under §9-403 of the Uniform Commercial Code, an assignee or its agent is subject to claims and defenses whether or not the required statement was included.  810 ILCS 5/9-403; Tex. Bus. & Com. Code §9.403.  Other states' versions of §9-403 do not materially differ.

58.     Healthcare Finance Direct's demand that Plaintiff and other consumers continue payments for transactions in which all contracted goods and services were not provided, with knowledge that they were not provided, is a demand for money to which it is not entitled.

7

59. The statement on the Healthcare Finance Direct website that it is not responsible for down payments or other payments made to SmileDirectClub is false, in that such payments are not excluded under 16 C.F.R. part 433.

60. Healthcare Finance Direct reports or causes reports to be made to consumer reporting agencies (credit bureaus) if consumers don't make payments under their contracts.

61. Reporting a debt to a credit bureau is "a powerful tool designed, in part, to wrench compliance with payment terms. . . ." *Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993).

62. Consumers who inform Healthcare Finance Direct that desire to stop payments because of failure to receive goods and services promised by SmileDirectClub are told that they will be sent to collections and that their credit score may be negatively impacted. Exhibit F is Healthcare Finance Direct's response to another consumer who expressed the desire to stop payments.

63. Since Healthcare Finance Direct knows full well that such persons are not obligated to pay in full, its actions in representing that persons are obligated to continue payments are fraudulent, *Brown v. LaSalle Nw. Nat'l Bank*, 820 F. Supp. 1078 (N.D. Ill. 1993), and its threats to inflict credit injury are extortionate.

64. Plaintiff only permitted Healthcare Finance Direct to continue charging her card because of its representations that she was obligated to do so and a desire to avoid injuring her credit, which would have inflicted injury at least as great as the payments.

65. Plaintiff made payments through the end of July 2024. (Exhibit G)

66. Defendant continues to dun Plaintiff for payment. (Exhibit H)

## **CLASS ALLEGATIONS**

67. Plaintiff brings this action on behalf of a class and a subclass, pursuant to Fed.R.Civ.P. 23(a) and (b)(2) (Count I) and (b)(3) (other claims).

68. The class consists of (a) all individuals (b) who contracted with SmileDirectClub (c) whose contracts or payment obligations are held by Health Direct Financing (d) who did not

8

receive all contracted goods and services. Persons with addresses in California are excluded.

69. The subclass consists of persons who reside in Illinois or contracted in Illinois.

70. Plaintiff may alter the class definitions to conform to developments in the case and discovery.

71. On information and belief, there are more than 100 class and subclass members, and the class and subclass are so numerous that joinder of all members is not practicable.

72. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

    a. Whether Defendant is entitled to demand and collect money from consumers who did not receive all contracted goods and services;

    b. Whether attempts to collect from such consumers violate the contracts;

    c. Whether attempts to collect from such consumers are unfair and deceptive;

    d. Whether representations that such consumers owe money are fraudulent at common law.

73. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

74. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer litigation.

75. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

    b. Members of the class are likely to be unaware of their rights.

### COUNT I – DECLARATION OF RIGHTS
### AND INJUNCTIVE RELIEF UNDER CONTRACTS

76. Plaintiff incorporates paragraphs 1-75.

77. This claim is on behalf of the class.

78. There is a controversy between Plaintiff and the class, on the one hand, and Defendant, on the other, as to whether Plaintiff and the class members are obligated to continue payments notwithstanding a material lack of performance.

79. A declaratory judgment will resolve the controversy.

80. Declaratory and injunctive relief is necessary to prevent Defendant from engaging in extrajudicial efforts to collect money to which it is not entitled, such as credit reporting. *Davis v. Bank of Am., N.A.*, 515 F. Supp. 3d 858, 861 (N.D. Ill. 2021); *Tepper v. County of Lake*, 233 Ill. App. 3d 80, 598 N.E.2d 361, 362 (2d Dist. 1992).

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class members and against Defendant:

   i. Declaring that Plaintiff and the class members are not obligated to pay without receiving full performance;

   ii. Enjoining Defendant from attempting to collect money from Plaintiff and class members who have not received full performance;

   iii. Awarding costs;

   iv. Awarding such other or further relief as the Court deems proper.

### COUNT II – CONSUMER FRAUD ACT

81. Plaintiff incorporates paragraphs 1-75.

82. This claim is on behalf of the Illinois subclass.

83. Defendant engaged in both unfair and deceptive acts and practices, in violation of 815 ILCS 505/2, by:

   a. Seeking and obtaining payment from Plaintiff and other persons who did not

      receive full performance;

  b. Misrepresenting and concealing the fact that Plaintiff and other persons who did not receive full performance are not obligated to pay Defendant.

  c. Engaging in credit reporting without regard to the fact that Plaintiff and other persons who did not receive full performance are not obligated to pay Defendant.

84. Defendant engaged in such conduct for the purpose of obtaining money from consumers.

85. Defendant engaged in such conduct in the course of trade and commerce in financial services.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class members and against Defendant:

  i. Declaring that Plaintiff and the class members are not obligated to pay without receiving full performance;

  ii. Enjoining Defendant from attempting to collect money from Plaintiff and class members who have not received full performance;

  iii. Awarding compensatory damages;

  iv. Awarding punitive damages;

  v. Awarding attorney's fees, litigation expenses and costs;

  vi. Awarding such other or further relief as the Court deems proper.

## COUNT III – COMMON LAW FRAUD

86. Plaintiff incorporates paragraphs 1-75.

87. This claim is on behalf of the class.

88. Defendant engaged in fraud by:

  a. Representing that Plaintiff and other persons who did not receive full performance were obligated to pay Defendant.

11

      b.      Misrepresenting and concealing the fact that Plaintiff and other persons who did not receive full performance are not obligated to pay Defendant.

89.      Defendant engaged in such conduct for the purpose of obtaining money from consumers.

90.      Defendant engaged in such conduct in the course of trade and commerce in financial services

.      WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class members:

      i.      Declaring that Plaintiff and the class members are not obligated to pay without receiving full performance;

      ii.      Enjoining Defendant from attempting to collect money from Plaintiff and class members who have not received full performance;

      iii.      Awarding compensatory damages;

      iv.      Awarding punitive damages;

      v.      Awarding costs;

      vi.      Awarding such other or further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 62070473)
Caileen M. Crecco (ARDC 6343265)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603-1841
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

**NOTICE OF LIEN AND ASSIGNMENT**

      Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

                                                    */s/ Daniel A. Edelman*
                                                    Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
20 S. Clark Street, Suite 1800
Chicago, Illinois 60603-1841
(312) 739-4200
(312) 419-0379 (FAX)

T:\40807\Pleading\1st Amended Complaint DAE 10-15-24_Pleading.WPD

**CERTIFICATE OF SERVICE**

Daniel A. Edelman certifies that on October 17, 2024, this document was filed via ECF, causing a copy to be sent to all counsel of record.

>*/s/ Daniel A. Edelman*
>Daniel A. Edelman